FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ JUN 15 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
UNITED STATES OF AMERICA,

                Plaintiff,

-against-

TRAVIS STROMAN,

                Defendant.
------------------------------------------------x

MEMORANDUM AND ORDER
09 CR 339 (ILG)

GLASSER, United States District Judge:

Following his conviction after a trial by jury of violating 18 U.S.C. § 922(g)(1), the defendant was sentenced to a term of imprisonment for 96 months, 3 years of supervised release and the mandatory special assessment of $100. The facts underlying that conviction, as revealed on a surveillance video which captured the criminal event, succinctly stated, were these: Stroman pursued two men into a neighborhood grocery store shooting at them several times, but fortunately not hitting either of them. Ammunition casings were recovered from the scene. A subsequent search of his apartment, authorized by a warrant, yielded what appeared to be a bulletproof vest, and a police scanner, a notebook with gang-related writings referencing murders of rival gang members, among other things. Presentence Investigation Report ("PSR") ¶7. In arriving at the advisory Guideline total offense level, the Court determined that an enhancement of the Guideline pursuant to § 2A2.1(a), captioned "Assault with Intent to Commit Murder: Attempted Murder," was applicable. His criminal history included three prior convictions for possessing firearms and two for possession of crack cocaine.

In support of the finding of the applicability of § 2A2.1(a), the Court made the following declarations:

> <u>I would have very little difficulty in concluding this was a premeditated murder</u>. Premeditation doesn't require an extended period of time, [as in] you have to sit and think about it for a half hour as to whether you will or not.
>
> <u>Looking at that videotape, it was obvious that Mr. Stroman was running into this bodega for the very specific purpose of shooting whoever it was he was aiming his gun at and had he hit him, he might very well have killed him</u>. So, that was not an accident. It wasn't a fortuitous event. <u>It was obviously something he clearly intended to do</u>.
>
> You don't run into a bodega, running after somebody, pointing a gun at him and shooting at him, unless this is something you intended to do. I have no difficulty with that.
>
> In addressing the defendant:
>
> What I see is a man who committed crimes time and time again, some quite vile. Possession of loaded guns, dealing in crack.... [R]unning into a bodega with a gun in your hand and shooting at people is a pretty strange way of trying to turn your life around.... <u>[Y]ou were shooting at them for the purpose of hitting them</u>. It is an odd way of turning your life around.... [Y]ou don't need a law to tell you <u>it is unlawful to attempt to kill someone</u>. It is unlawful. <u>I saw the video. That's what it looks like on the video, what you were attempting to do</u>.

The defendant appealed his conviction and sentence contending, among others, that the sentence imposed was procedurally unreasonable in that I found that he shot at the victims with the specific intent to kill. In finding that contention meritorious, the Court of Appeals wrote:

> The Supreme Court has held that 'although a murder may be committed without an intent to kill, an <u>attempt</u> to commit murder requires a specific intent to kill.... Therefore, the district court must have concluded by a preponderance of the evidence, that Stroman actually attempted or intended to kill his victim (internal citation omitted).

After reciting this Court's statement repeated above beginning with the paragraph

2

beginning "Looking at that videotape," and the paragraph following it, the Court of Appeals went on to write:

> This statement does not directly address whether Stroman intended to kill his victim. Although the district court further stated that it 'look[ed] like' Stroman was 'attempting to kill someone,'. . . This statement does not support a finding of specific intent, and therefore we conclude that the district court committed procedural error. Accordingly, <u>we vacate Stroman's sentence and remand the case to the district court for resentencing</u>. (emphasis mine).

The other arguments on appeal were found to be without merit and the Court again pronounced that the conviction was affirmed and the sentence is "VACATED and REMANDED for further proceedings consistent with this order."

In a letter dated June 2, 2011, the government urged the Court to impose the same sentence of 96 months, reciting the same portions of the sentencing transcript set out above and because, it asserts, the record plainly supports it.

Less than an hour before the defendant was to be resentenced, a letter on his behalf in support of a modification of the initial sentence was received by this Court. In essence, he contends that his view of the video supports the conclusion that "the evidence of the shooting shows nothing more than that the assailant intended to frighten the men he chased into the store," a conclusion based upon a hypothesis.

I emphasized the Circuit Court's decision vacating the defendant's sentence and remanding the case to this Court for resentencing and again, more emphatically VACATING and REMANDING, raising as those directions do, the nature of the proceeding before me upon the defendant's return. Was he to be resentenced *de novo*, or was I merely to clarify the record of the initial sentencing proceeding regarding my

3

finding as to the defendant's intent? United States v. Ekhator, 853 F. Supp. 630 (E.D.N.Y. 1994). That problem is resolved by determining the legal significance of the Circuit Court's order. When a sentence is vacated and the matter is remanded for resentencing, the defendant reappears before the Court with a clean slate as if he had not previously been sentenced. United States v. Maldonado, 996 F.2d 598, 599 (2d Cir. 1993). When, however, the matter is simply remanded for further proceedings, the district court is being asked merely to clarify the record of the initial sentencing proceeding. See Ekhator, *supra*, for a more robust discussion of this matter.

If I regard the Circuit Court's Order as a remand only, I reiterate what I stated regarding the defendant's intent at the initial sentencing and which is set out above. The clarification a remand requests is that I find that the defendant intended to attempt to kill the persons he fired at. It hardly needs repeating the instruction trial courts routinely give juries on the element of intent. They are told that intent is a state of mind which is invariably established circumstantially from a consideration of the surrounding facts and circumstances. It is relevant and significant to note as well, the instructions given juries on the crime of attempt to commit murder. They are instructed that the following elements must be proved beyond a reasonable doubt: (1) That the defendant intended to commit the crime of murder; and (2) That he did some act that was a substantial step in an effort to accomplish the crime. Elaborating on those elements, the jury is instructed that "The acts of a person who intends to commit a crime will constitute an attempt <u>when the acts themselves clearly indicate an intent to commit the crime</u>" and the acts are a substantial step towards the commission of the crime (emphasis mine). See Sand, Modern Federal Jury Instructions, Criminal, § 10.01. The

4

acts of the defendant captured on the video echo those instructions precisely.

In deciding to vacate and remand, the Circuit Court wrote "The Supreme Court has held that [a]lthough a murder may be committed without an intent to kill, an <u>attempt</u> to commit murder requires a specific intent to kill," citing <u>Braxton v. United States</u>, 500 U.S. 344, 351 n.* (1991). For reasons that follow, I respectfully submit that <u>Braxton</u> is inapposite, plainly distinguishable from this case and the Court's reliance upon it was misplaced.

I recite the facts in <u>Braxton</u> as found in the opinion of the Circuit Court which are slightly more explicit than they were replicated by the Supreme Court. <u>See</u> <u>United States v. Braxton</u>, 903 F.2d 292 (4th Cir. 1990). The facts are that four deputy United States Marshals arrived at Braxton's door with a warrant for his arrest. They knocked on the door and although they could hear movement inside, there was no response. The deputies managed to unlock the door which they found was secured with a chain lock, identified themselves and knocked again. Braxton then fired a .39 caliber revolver through the door and, shortly thereafter, fired another round through the door. Braxton eventually surrendered, was arrested and charged with (1) an attempt to kill a deputy United States Marshal (§ 1114); (2) assault on a deputy Marshal (§ 111) and (3) use of a firearm during a crime of violence (§ 924(c)). He pleaded guilty to the assault and firearms count. At a Rule 11(f) plea hearing, Braxton agreed only that he shot "through the door opening and that the gunshot lodged in the front door just above the doorknob." He stated to the Court: "I did not shoot at the Marshals when my door was kicked in, but I was not trying to kill the Marshals, harm the Marshals. I was – it was all happening in such a fast instant that the only thing I could think of doing was defending

5

my home and trying to keep them from taking me back to St. Elizabeth's." 903 F.2d at 297.

In imposing sentence, the district court applied § 1B1.2(a) of the Sentencing Guidelines ("USSG"). Application Note 1 to this Guideline provides in relevant part:

> (A) in the case of a plea agreement containing a stipulation that specifically establishes a more serious offense than the offense of conviction, . . . the offense guideline section applicable to the stipulated offense is to be used.

The Guideline for attempted murder was then used and Braxton was sentenced as though he had been convicted of 18 U.S.C. § 1114, the attempted murder charge to which he did not plead guilty. That statute provides in relevant part:

> Whoever kills or attempts to kill any officer . . . of the United States . . . while such officer . . . is engaged in . . . the performance of official duties . . . shall be punished.

In reversing and remanding the Court wrote at 349-50:

> For Braxton to be guilty of an attempted killing under 18 U.S.C. § 1114, he must have taken a substantial step toward <u>that</u> crime, and must also have had the requisite *mens rea* . . . .
>
> \* \* \*
>
> All Braxton agreed to at the Rule 11(f) hearing was that he "shot through the door opening [and that] the gunshot lodged in the front door . . . .
> \* \* \*
> [He did] not say that he shot at the Marshals.

My attention was piqued by the Supreme Court's references to what Braxton agreed to at the hearings pursuant to Rule 11(f) of the Federal Rules of Criminal Procedure at which Braxton pleaded guilty to the assault and firearm counts and not to the count charging him with the attempt to kill a deputy United States Marshal. Rule

6

11(f) as it currently reads simply provides that plea discussions are not admissible. The references to Rule 11(f) <u>hearings</u> clearly suggested that the Rule read differently in 1989 when Braxton pleaded guilty and indeed it did. The Rule then was what is now Rule 11(b)(3) which requires a court to find that there is a factual basis for a plea of guilty. A careful reading of the Court's opinion reflects that, <u>viz</u>.: "The purpose of the [11(f)] hearing was simply to provide a factual basis for accepting Braxton's guilty plea." 500 U.S. at 346.

The inapplicability of <u>Braxton</u> to this case thus becomes readily apparent. First, Stroman did not plead guilty. There was no plea agreement that specifically established the more serious offense of murdering an officer of the United States, the crime proscribed by 18 U.S.C. § 1114. Braxton specifically did <u>not</u> plead to that charge. He explicitly stated he did not intend to harm a Marshal, hence the <u>specific</u> intent reference upon which the Circuit Court seized had no relevance to this case. Stroman did not plead guilty. USSG § 1B1.2(a) has no application here. The murder Stroman intended to commit and took substantial steps to accomplish —pursuing two men into a grocery and fired his gun at them was dramatically captured on the screen of the grocery's video camera. The murder he attempted to commit was defined by N.Y. Penal Law § 125.25, not the murder of a police officer defined in § 125.27, the crime analogous to 18 U.S.C. § 1114 charged in <u>Braxton</u>.

It is interesting to note that the Court in <u>Braxton</u> made the observation that "A stipulation by Braxton that he shot 'at a Marshal' without any qualification about his intent would suffice to establish a substantial step towards the crime and <u>perhaps</u> the necessary intent." 500 U.S. at 349. That snippet of <u>obiter</u> is plainly apposite here.

7

Braxton presents no impediment to the enhancement of Stroman's sentence, it supports it.

I regard the matter, as I must, as returned to me on a clean slate and for sentencing as if for the first time, the initial sentence having been vacated and remanded. The presentence report relied upon initially was again carefully reviewed. The continued applicability of that report was not disputed and for all the reasons discussed above at some length, I once again found the base offense level of 27 given the application of USSG § 2A2.1(a)(2) to be correct.

I have also reviewed the transcript of the proceeding on March 10, 2010, at which the defendant was initially sentenced. I stated then that one could easily conclude "that his criminal history category of II doesn't adequately reflect the seriousness of his criminal record. I now make that determination explicitly in resentencing him. That criminal history reflects convictions on three occasions for criminal possession of loaded firearms. On one of those occasions he admitted firing two shots from the window of a stolen automobile from a gun he said he needed to protect the amount of jewelry he wore. PSR at ¶¶ 22-24. In addition, the defendant was convicted once for attempted criminal possession of crack cocaine and once for criminal possession of crack cocaine. PSR ¶¶ 28-33.

A review of the transcript also revealed that in addressing the defendant at his initial sentencing I told him that the Bloods gang paraphernalia seized from his apartment warranted the inference of his involvement with that notoriously violent gang (Tr. at 21) and I alluded to that observation in sentencing him again as 18 U.S.C. § 3661 permits.

The presentence report as corrected at the sentencing proceeding on March 10, 2010, is again accepted in its entirety, and the defendant is committed to the custody of the Bureau of Prisons for a term of 96 months to be followed by a three year period of supervised release and is directed to pay a Special Assessment of $100.[1]

SO ORDERED.

Dated: Brooklyn, New York
June 14, 2011

S/ILG

_____
I. Leo Glasser

---

[1] It should be noted that at the initial sentencing proceeding, defense counsel stated: "In regards to the sentence I understand the Court's ruling on the guideline range. The guidelines are generally appropriate and although I requested a lower guideline, I think that the guideline range the Court has found is certainly sufficient to serve the ends of justice .... I think the guideline range the Court indicated is significant, certainly more than six years in prison, and it is an appropriate range and I think a sentence within that range is appropriate. Tr. at 15, 17.